ROBERT S. McCLUER *vs.* MANCHESTER AND LAWRENCE RAILROAD.

Parol evidence that a railroad corporation established by law in another state has held itself out, through its agents, as a common carrier over a railroad in this commonwealth, is sufficient *prima facie* evidence of its capacity to contract for such carriage, to maintain an action against it for the loss of merchandise entrusted to it.

A railroad corporation which has leased a portion of another railroad connecting with its own is not exempted from liability to the owner of goods delivered to it at a depot on the portion so leased, by an agreement with the proprietors of that road, by which the two corporations upon their respective roads mutually agree to furnish suitable depot accommodations, and receive and deliver freights, and that the liability of the first corporation for upward freight upon the road of the second shall not commence until delivery on the cars of the first.

A railroad corporation cannot dispute their liability for freight delivered to them to be carried over a railroad leased to them, on the ground that the lease is void.

ACTION OF CONTRACT against a corporation created by the laws of New Hampshire, as common carriers of goods between Lawrence in this commonwealth and Manchester in the State of New Hampshire, to recover the value of sundry boxes of tallow delivered by the plaintiff to them at Lawrence to be carried to said Manchester and thence to be forwarded to Rumney, N. H., and destroyed by fire by reason of the defendants' want of care on the 15th of December 1854. The answer denied the plaintiff's loss, the defendants' negligence, and their liability to the plaintiff; and averred that the Boston and Maine Railroad were responsible for the plaintiff's loss, if any; and that the defendants were liable, if at all, as warehousemen only.

At the trial in the court of common pleas in Essex, before *Mellen*, C. J., the plaintiff introduced oral testimony of these facts: The Methuen Branch Railroad, owned by the Boston and Maine Railroad, and leased to the defendants with the privilege of running their cars into the depot at Lawrence, extends northwardly from Haverhill Street in Lawrence to the line between New Hampshire and Massachusetts, and there joins the track of the defendants, which extends thence to Manchester, N. H

The freight agent and receiving clerk at Lawrence were em-
ployed and paid by the Boston and Maine Railroad, and by
their instructions acted also as the agents of the defendants, and
as such accounted directly to them.  The defendants had no other
agents there, and paid the Boston and Maine Railroad a certain
percentage per ton as a compensation for loading and unloading
the defendants' merchandise for them at the freight depot in
Lawrence.   The defendants, and not the Boston and Maine
Railroad, controlled and managed the business of transporting
merchandise between Lawrence and Manchester and the north.
The plaintiff's agent left the tallow, securely packed and prop-
erly directed to the plaintiff at Rumney, with the receiving clerk
in the freight depot at Lawrence, which stands on the line of
the Methuen Branch Railroad, south of Haverhill Street; and
it was never forwarded by the defendants, but was consumed
by fire, while in the depot.

The plaintiff's agent testified that he had for several years
been in the habit of sending merchandise over the defendants'
road to Rumney and other places north of Lawrence, and had
received goods which had been sent from the north, at the same
depot, and paid the defendants for the carriage thereof.  To
the admission of this last testimony the defendants excepted,
upon the ground that a corporation can only do such acts as its
charter authorizes, and that parol evidence of the usual course
of business of a foreign corporation was inadmissible until its
authority had been proved by the production of its charter.

The defendants were allowed, against the plaintiff's objec-
tion, to give in evidence a lease at will, executed in October 1849,
by which, among other things, the Boston and Maine Railroad
agreed " to grant to the Manchester and Lawrence Railroad the
use of that part of their road extending northerly from their
northern depot in Lawrence, wherever the same may be, to the
state line, and also to furnish them with sufficient accommoda-
tions at their passenger depot; and also to allow them to use
the side tracks that may be necessary for the distribution of
freight in Lawrence;" and the Manchester and Lawrence Rail-
road agreed " to keep that part of the Boston and Maine Rail

11 *

road, extending from their depot in Lawrence to the state line above mentioned, in repair," and to pay to the Boston and Maine Railroad, for the use of the same, such a proportion of the net earnings of the whole road from Manchester to Lawrence " as the part of the Boston and Maine Railroad above mentioned bears to the whole road from Manchester to the depot in Lawrence : " Also an indenture dated March 1st 1851, by which the Concord Railroad, including the Manchester and Lawrence and Methuen Branch Railroads, of the first part, and the Boston and Maine Railroad of the second part, mutually agree that " each party is authorized to undertake and agree for both, and will so undertake and agree, for the transaction of any joint business of the companies, meaning by joint business any business jointly participated in by them, originating upon one and terminating upon the road or roads of the other of the respective parties, subject to modifications hereinafter set forth ; " that " each party, upon its respective road or roads, will furnish for the joint business necessary and suitable station and depot accommodations, furnish and sell tickets to passengers, and will with suitable and proper care receive and deliver all freight offered for transportation, including the loading and unloading necessary therefor ; " it being "understood, in regard to said first party's liability for the safe care and custody of joint freight while upon the road of the second party, that such liability shall not commence upon upward freight until it is delivered on board the cars of the first party ; " and " that the Methuen Branch Railroad, which is the property of the party of the second part, shall be leased, with all its rights, properties and fixtures to the party of the first part, for and during the term of five years from the first day of November last, with the right to use the passenger tracks from thence into the new passenger depot in North Lawrence, and the use of the depot for the reception and delivery of passengers and baggage, and such other depot accommodations as may be necessary for the business of said road ; and said party of the second part covenants to keep said track and depot accommodations in good and sufficient order and repair, south of the centre of Haverhill Street "

The defendants contended that the lease and indenture showed that the tallow, while in the depot, was in the custody of the Boston and Maine Railroad; that they, instead of the defendants, were responsible for it; that the freight agent and his assistants were acting for them, and not as agents for the defendants, and that the tallow had not passed into the custody and under the control of the defendants; and they requested the court so to instruct the jury. But the court declined so to do; and did instruct them that if they believed the defendants held themselves out as common carriers from Lawrence to Manchester, and by their agents received the tallow for the purpose of transporting it according to its direction, then the defendants would be liable if it was lost as alleged.

The defendants further requested the court to instruct the jury "that the defendants being a foreign corporation, and not authorized by the laws of this commonwealth to act in their corporate capacity, and not being authorized to lease the Methuen Branch Railroad, said lease was void; that the Methuen Branch Railroad had no right to transfer its privileges and duties to others without the sanction of the legislature, and that therefore the defendants were not liable as common carriers over the Methuen Branch Railroad." But the court declined to give such instructions.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions, which were argued in writing.

*R. Cross & N. G. White,* for the defendants.

*B. F. Watson,* for the plaintiff.

HOAR, J. The plaintiff seeks to charge the defendants as common carriers of goods to be transported from Lawrence to Manchester; and no question is made as to their liability in this action, if a valid contract with them in that capacity is established upon evidence not open to exception.

The parol evidence was certainly sufficient to show that the defendants were engaged in the business of common carriers of merchandise between those places, and that the plaintiff delivered the tallow to agents employed by the defendants for the purpose of receiving it for transportation. It is no sufficient

answer to this proof, to suggest that the defendants were not authorized by their charter in New Hampshire to make such a contract, or to appoint agents for such a purpose. If a corporation, created by the laws of another state, whose existence and legal organization are not disputed, is found making contracts within this state through agents which it employs, and a suit is brought in such a manner that the corporation is made amenable to the jurisdiction of our courts, in our opinion it is not necessary for the plaintiff, who seeks to enforce the contract, to furnish in the outset any other evidence of the capacity of the corporation to make the contract.

Nor do the lease and agreement between the defendants and the Boston and Maine Railroad render the evidence inadmissible, or in any degree control its effect. If the tallow was delivered to agents of the defendants, and received by them on behalf of the defendants for transportation, it is difficult to see how the responsibilities of the defendants to the plaintiff upon that contract could be varied by any private arrangement between the defendants and a third party. But, upon a full examination of that lease and agreement, they do not seem to be inconsistent with the plaintiff's claim. By their terms, the business between Lawrence and Manchester is to be done by the Manchester and Lawrence Railroad ; and though the Boston and Maine Railroad agree to furnish depot accommodations at Lawrence, and to receive freight, it is for and on behalf of the defendants.

The decision of this court in the recent case of *Langley* v. *Boston & Maine Railroad*, 10 Gray,    , rests upon grounds wholly distinct from those upon which this action is based. The court there decided that the Boston and Maine Railroad, being the owners of the Methuen Branch Railroad, and authorized to run cars over it as common carriers of passengers and freight, could not, without the authority of the legislature, lease that road to a corporation created by another state, and transfer their powers and duties to such corporation, so as to discharge themselves from liability for injuries to persons or property which might arise in the use of the road.

But if the plaintiff in the present action might have had a remedy, at his election, against the Boston and Maine Railroad, he is not therefore precluded from seeking it against the party with whom he directly contracted. The defendants, so far as any evidence showed, were competent to hire and use the Methuen Branch Railroad, if they could find any party that would permit them to use it and put them in possession. They were in the actual possession and use of it, without obstruction from the Boston and Maine Railroad or the Commonwealth; and they received the plaintiff's property through their agents, and agreed that it should be safely kept, and transported to its destination. It is no answer to a breach of that agreement, to deny the validity of their own contract for the use of the road. An innkeeper might as well resist the claim of a guest for compensation for the loss of his luggage, by suggesting doubts as to the validity of his landlord's title to ᵀ he inn which he hired.

*Exceptions overruled.*